TRACEY v. REID et al.

(Supreme Court, Appellate Division, Second Department. March 9, 1906.)

1. TRIAL—EVIDENCE—OBJECTIONS.

Where a direction to a witness to repeat a conversation with another is objected to, the entire conversation as related in answer to questions is subject to the objection.

[Ed. Note.—For cases in point, see vol. 46, Cent. Dig. Trial, §§ 211–222.]

2. APPEAL—HARMLESS ERROR—ADMISSION OF EVIDENCE.

In an action for an assault, where the evidence as to its commission was conflicting, it was prejudicial error to admit a conversation in which the witness, not a witness to the assault, related the occurrence as shown by plaintiff's evidence.

3. SAME—OBJECTIONS TO EVIDENCE—MOTION TO STRIKE OUT.

A party is not required to move to strike out testimony erroneously admitted over objection.

Gaynor and Rich, JJ., dissenting.

Appeal from Trial Term, Kings County.

Action by Jane Tracey against Daniel Reid and another. From a

judgment in favor of plaintiff and from an order denying a new trial, defendant Reid appeals. Reversed.

Argued before HIRSCHBERG, P. J., and WOODWARD, GAYNOR, RICH, and MILLER, JJ.

Herbert B. Brush and George W. McKenzie, for appellant.

Thomas F. Magner, for respondent.

MILLER, J. The plaintiff has recovered a judgment for personal injuries alleged to have been inflicted upon her in the commission of an assault by one of the appellant's servants. The action was brought against the appellant and one Lyman G. Bloomingdale, and it appeared that the appellant, a piano mover, was employed by the defendant Bloomingdale to move a piano from the premises where the plaintiff lived, and that he sent two of his employés to the place for the purpose, and the plaintiff claims that, while there, one of them assaulted her. She is corroborated as to the assault by a little girl. The two men flatly contradicted her. The learned trial court dismissed the complaint as to the defendant Bloomingdale, and sent the case to the jury as to the appellant upon two questions of fact, viz., whether the assault was committed, and whether the men were acting within the scope of their authority. Our attention is called to an exception which is fatal to the recovery. The plaintiff's daughter, who was not a witness to the transaction, testified that the day following the alleged assault she went to the store of the defendant Bloomingdale and there had a conversation with one of his salesmen. I now quote from the record:

"Q. Tell us all that you said to him and all that he said to you? (Objected to as incompetent, no proper foundation having been laid, and as not binding on either of the defendants. Objection overruled. Exception by defendants.) A. Why, this salesman that we bought the piano from took me into the office. I told him just what happened down there, how they abused my mother. Q. Tell what you said. A. I went in to him and I started and I said: 'Do you send men, when you sell a piano and when people fall in arrears with two or three payments—does a firm like Bloomingdale's send two burly men to lick and abuse a woman and take the piano away from her, when she had sent a payment the previous week?' He says: 'No; we do not.' He says: 'We have no men in our employ, and if we had we would not keep them that would do such a thing.' * * * Q. I ask you about the conversation that took place between you and this superintendent up in Bloomingdale's store. A. That is all there was. Q. Is that all that you remember of the conversation? A. That is all. Q. Let me see if I can refresh your memory. Did you tell him anything about what happened the day before at your house? (Objected to; objection overruled; exception taken.) A. I did. Q. What did you tell him about what happened at your house the day before? A. I told him they struck my mother in the knee with the door, and they struck her in the chest and knocked her over a chair."

This testimony must all be regarded as in subject to the specific objection that it was not binding on either defendant. Sherman v. D. L. & W. R. R. Co., 106 N. Y. 542, 13 N. E. 616. The assertion that the evidence was admitted against one defendant only is directly opposed to the record, and there is not a suggestion in the record of the the theory upon which it was received. We may speculate on what was in the learned trial judge's mind, but such speculation cannot supply an

adequate reason for admitting evidence which was the rankest hearsay as to both defendants. The appellant was not required to move to strike out such evidence admitted over his objection, and the only question here is, has the respondent borne the burden of satisfying us that this manifest error was harmless? Gearty v. Mayor, etc., of New York, 183 N. Y. 233, 76 N. E. 12. The objectionable testimony was received under a ruling of the court which in effect instructed the jury that it was proper evidence for them to consider in determining the issues. The plaintiff had to establish her case by preponderating proof. The testimony of herself and the little girl, balanced against the testimony of the two men, may have left the jury in doubt. How are we to say that the fact that the plaintiff's daugher immediately after the occurrence went to the people supposed to have been responsible and there made a complaint and related the occurrence exactly as the plaintiff testified to it did not have the effect of turning the scales in the plaintiff's favor? That this evidence might have prejudiced the defendant is so manifest that I should not discuss it were it not for the assertion that we, looking into this record, would not be influenced by it; therefore the jury, who must be credited with like common sense, could not have been. If this is to be the rule for determining whether a mistake in admitting evidence is reversible error, it were better to abolish all rules of evidence. When we ourselves know that it is impossible accurately to gauge the effect of our own conceits and of irrelevant facts upon our own judgment, the absurdity of testing the effect of a given fact upon another mind by the effect which we think it would have upon our own becomes apparent. The test is not would the evidence have affected us; but might it have affected another. The plaintiff's counsel evidently thought that this testimony would help his case, and, not satisfied with one statement of the witness, had her repeat her narrative of the alleged assault in substance as the plaintiff herself testified to it.

Counsel have not infrequently argued in this court that conceded error in the admission of testimony was harmless in cases in which it was apparent that such testimony was introduced for the sole purpose of improperly influencing the jury by counsel who knew that it was improper. Of course, common sense should govern juries, trial judges, and appellate courts, but when the trial judge makes such a manifest error in the admission of evidence, must we not disregard our common sense in order to say that the jury may not have made a like error in considering it? Applying the rule of common sense to this question, we all know very well that juries do sometimes give controlling effect to facts and circumstances not regarded by court or counsel as of any moment. The mental processes by which these 12 jurors reached a conclusion are not photographed in this record, and there are no data upon which to base a conclusion as to whether they considered the objectionable testimony. But as a legal proposition the reception of such testimony was error which may have harmed the appellant. Under our system of jurisprudence judicial investigations must be conducted according to settled rules of evidence, and if these rules are violated appellate courts must reverse unless satis-

fied that the error was harmless. I have no quarrel with this system, but am persuaded that justice is better administered by adhering to settled rules than by brushing them aside upon the theory that our common sense tells us that they are of no moment, and I therefore vote to reverse the judgment and order, and to grant a new trial, costs to abide the event.

HIRSCHBERG, P. J., and WOODWARD, J., concur.

GAYNOR, J. (dissenting). The objection to the evidence was not that it was incompetent against the appellant, but against "either of the defendants," and the exception taken was also joint. Hence, after an every day rule, the exception is not good if the question was admissible against either defendant. The trial judge seems to have deemed it admissible against defendant Bloomingdale (who was granted a non-suit later on), as tending to get an admission of him against himself concerning the battery, and counsel for the appellant seems to be still of that view. The question was allowed on that theory only, and hence against Bloomingdale only. But this was erroneous, for the conversation being not with Bloomingdale but with his salesman, the question was not competent against him, for such an admission after the fact by an agent is not binding on the principal.

The question having been asked and allowed against the defendant Bloomingdale only, and on the theory that it was competent against him only, the appellant should have moved that it be struck out after the complaint had been dismissed as to Bloomingdale, if he thought it could harm him. Having failed to do so, he should not now be permitted to claim that he was injured by it. It is obvious that he attached no importance to it on the trial, and that no one else did.

But the evidence could not in the minds of sensible men have done the appellant any harm; and we must rate trial judges and jurymen as sensible men, though there may be a tendency to the contrary. It could not even have done Bloomingdale any harm, if the case against him had gone to the jury, for no admission against him was obtained, which was the sole object of the evidence. On what foundation then may it be said to have injured the appellant?

And it must be borne in mind that this evidence was not by the plaintiff, but by her daughter, who was not present at the battery. What would we have to think of juries in order to say that this jury may have been influenced in deciding whether there was a battery by the gab of a person who was not present at the occurrence at all? By declaring such a whimsical opinion of juries, it seems to me that we would provoke a like opinion of ourselves.

It would be very easy for us sitting here to assume a sense of exclusive average intelligence in ourselves, and say that the evidence could not have affected us—quite absurd to suggest it—but that we do not know but that it influenced the jury, and may be the trial judge —which is of course putting them below par in intelligence. I am not willing to join in that. We have already had much of that in this state. Very recently a learned judged voiced his own estimate of

juries, if not that of his court, by saying (in a case tried in Kings county and that went up from this court) "we should not be hypercritical in construing it (the charge) simply because a jury has unexpectedly rendered a verdict in favor of a railroad corporation." How strange this sounds to the bench and bar of this part of the state will be understood when it is stated from the records that here in Kings county such corporations constantly get over sixty five per cent. of the verdicts; and the same is true generally in this judicial department. If there be localities which are afflicted with ignorant or prejudiced verdicts, that is not the fault of the jury system, but of the public officials who summon unfit jurymen, and leave the fit men off the panel, and of the local bench and bar which suffer such a wrong to continue.

It is not enough that it was a technical error under the common-law rules of evidence to admit the evidence. Trial judges are to be guided by such rules of evidence, it is true; but that does not mean that they must avoid all error in order to make judgments good; that judgments must be reversed for every error in the admission of evidence. A trial judge is not perfect any more than we or any of the sons of men are. A rule of perfection can no more be applied to the trial of a law suit than to any other human transactions. A rule of common sense is the working rule of this world, and the law never departs from common sense, though it may sometimes be made to seem to do so.

RICH, J., concurs.